FRIENDS OF GOVERNOR TOM KEAN, THE AUTHORIZED COM-
MITTEE FOR THE RE-ELECTION OF GOVERNOR THOMAS H.
KEAN, PLAINTIFF-APPELLANT, v. THE NEW JERSEY ELEC-
TION LAW ENFORCEMENT COMMISSION, AN AGENCY OF
THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

JOSEPH AZZOLINA AND JOAN SMITH, PLAINTIFFS-APPEL-
LANTS, v. THE NEW JERSEY ELECTION LAW ENFORCE-
MENT COMMISSION, AN AGENCY OF THE STATE OF NEW
JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued August 20, 1985—Decided August 30, 1985.

Before Judges SIMPSON, LONG and GAYNOR.

*John P. Sheridan,* attorney, argued the cause for plaintiff-appellant, Friends of Governor Tom Kean (*Mr. Sheridan* and *Allen E. Molnar,* on the brief).

*William F. Dowd,* attorney, argued the cause for plaintiffs-appellants, Azzolina and Smith (*Mr. Dowd,* on the brief).

*Edward J. Farrell,* attorney, argued the cause for defendant-respondent, The New Jersey Election Law Enforcement Commission (*Mr. Farrell* and *Cynthia H. Reinhard,* on the brief).

*Stephen J. Edelstein,* attorney, submitted a brief on behalf of the Shapiro '85 General Election Committee, Inc.

The opinion of the court was delivered by

SIMPSON, P.J.A.D.

Plaintiffs challenge the validity of a portion of Advisory Opinion 33–1981 designated as Question 4 and the entirety of Advisory Opinion 10–1985 (hereafter AO 33–1981 and AO 10–1985, and collectively the AOs) issued by Defendant pursuant to *N.J.S.A.* 19:44A–6 of The New Jersey Campaign Contributions and Expenditures Reporting Act (*N.J.S.A.* 19:44A–1 et seq.). The AOs, issued by the New Jersey Election Law Enforcement Commission (ELEC), purport to require the allocation of a portion of certain campaign expenses of assembly candidates and county and other local office candidates to the gubernatorial campaign expenditure limits set forth in *N.J.S.A.* 19:44A–7. With the full cooperation of all interested counsel, briefing and oral arguments have been expedited to facilitate this early decision on the merits. The operative facts are not in dispute.

Governor Thomas H. Kean is the Republican candidate for reelection on November 5, 1985 and the Democratic challenger is Essex County Executive Peter Shapiro. On the same date two persons will be elected to the Assembly for each of 40 legislative districts, so that there are 80 Republican candidates and 80 Democratic candidates for these offices. In addition to any independent candidates for the Assembly, there are Republican, Democratic, and some Independent candidates for a number of other county and local offices. Plaintiffs in these consolidated cases are the authorized campaign committee for the reelection of Governor Kean (the "Kean Committee") and

the Republican candidates, John Azzolina and Joan Smith, for the 13th Legislative District (the "Republican Assembly Candidates"). Although not a party to these cases, the Shapiro '85 General Election Committee, Inc., the authorized campaign committee for the Democratic gubernatorial candidate, participated in an ELEC public meeting that considered the challenge to the AOs and has filed a letter brief with this court in support of both AOs.

The public policy of New Jersey requires reporting of election campaign contributions and expenditures. *N.J.S.A.* 19:44A–2; *New Jersey Chamb. Commerce v. New Jersey Elec. Law Enforce. Comm.*, 82 *N.J.* 57 (1980). For the office of Governor, our policy is to provide financing with public support so that campaigns will be "... free from improper influence and so that persons of limited financial means may seek election to the State's highest office." *N.J.S.A.* 19:44A–27. The formula in *N.J.S.A.* 19:44A–7 limits the amount which may be spent "in aid of the candidacy" of gubernatorial candidates. *N.J.S.A.* 19:44A–38 provides that ELEC may adopt rules and regulations "to implement the provisions of this act and to carry out its purpose." The problem in these cases begins with the following regulations adopted by ELEC (citations are to *N.J.A.C.*):

19:25–13.1 Allocation

(a) Where an expenditure is made on behalf of two or more candidates, the expenditure must be allocated between such candidates in a reasonable manner so as to fairly reflect the relative value to each of the candidates of such expenditure. The initial allocation should be made by the committee or candidates on a reasonable basis, and in advance of the expenditure where possible. All documents and financial records relating to the allocation and the expenditure should be retained:

1. Example: "Committee for A and B" is conducting a political campaign on behalf of candidate A and candidate B. The committee proposes to expend $100.00 for the purchase of a quantity of bumper stickers containing the slogan "Vote for A and B". The committee determines that the stickers are of equal value to each of the candidates. Thus $50.00 of the expenditure should be allocated to candidate A and $50.00 should be allocated to Candidate B. Financial records and a record of the facts on which the allocation is based must be retained.

19:25–15.3 Definitions for this subchapter

The following words and terms, when used in this subchapter, shall have the following meanings unless the context clearly indicates otherwise.

 \* \* \* \* \* \* \* \*

"Independent expenditure" is an expenditure in aid of a candidate which is not made with the cooperation or prior consent of, or in consultation with or at the request or suggestion of, the candidate or any person or committee acting on behalf of the candidate.

19:25–15.28 Independent expenditures

(a) Independent expenditures shall not be deemed to be expenditures within the meaning of N.J.S.A. 19:44A–7, but all such expenditures shall be subject to all of the reporting and disclosure requirements of the act. Each person or political committee making independent expenditures who is required to file election reports pursuant to N.J.A.C. 19:25–12.5 shall include in the reports required under the act a sworn statement on a form provided by the commission that such independent expenditure was not made with the cooperation or prior consent of, or in consultation with or at the request or suggestion of, the candidate or any person or committee acting on behalf of the candidate.

(b) Any advertisement which is an independent expenditure shall include a clear and conspicuous statement that the advertisement is not authorized by any candidate and shall state the name and address of the person or organization making the expenditure.

AO 33–1981, issued July 23, 1981, provides, in relevant part, as follows:

Question 4. How combined advertising, that is, advertising on behalf of the gubernatorial candidate and other candidates, would be allocated.

This question is necessarily complicated by the fact that a large number of variables can easily be imagined. The Commission is generally of the view that, in the absence of extraordinary circumstances, an ad of this combined type which named or pictured or otherwise clearly identified the gubernatorial candidate would be allocable in an amount not less than 25% to the gubernatorial candidate.

In the simplest case in which the gubernatorial candidate "A" were named together with, for example, "B" and "C" and "D" (a senatorial candidate and two assembly candidates), and equal prominence were given to each of the persons, an allocation of 25% to the gubernatorial candidate would be presumed to be proper in the absence of a substantial showing that some greater allocation to the gubernatorial campaign was called for.

A different question arises where the name of the gubernatorial candidate is linked with, for example, "candidates for senate and assembly" or a similar type of designation. In that case, the Commission is of the view that at least 10% of the cost could properly be allocated to each of those other offices.

Whether a greater percentage could be allocated would be a question of fact and would have to depend on the other circumstances involved.

In the case involving one specific example, the mention of the gubernatorial candidate with candidates for 9 other offices (whether or not named) would not result in an allocation of one-tenth of the cost to the gubernatorial candidate. As described above, it would, in the absence of extraordinary circumstances, result in an allocation of at least 25% to the gubernatorial candidate. A piece in favor of "named gubernatorial candidate and the party slate" or "the (named gubernatorial candidate) team" would in all probability be regarded as requiring an allocation of nearly all of the expenditure to the gubernatorial candidate.

AO 10–1985 provides as follows:

State of New Jersey

ELECTION LAW ENFORCEMENT COMMISSION

July 19, 1985

William F. Dowd, Esquire

121 Monmouth Parkway

West Long Branch, New Jersey 07764

Re: Advisory Opinion 10–1985 .

Dear Mr. Dowd:

I have been requested by the Election Law Enforcement Commission to respond to your letter of June 12, 1985, requesting an advisory opinion.

As you know, the Commission has considered your request and has received commentary from various interested parties. The Commission has determined to adhere to the response given by the Commission to question No. 4 in the opinion of the Commission 33–1981, except that the Commission has reduced the minimum allocation figure from 25% to 15%, to reflect the significance of the increase of the cost of election campaigns over the increase in the expenditure limits applicable to those campaigns.

The Commission has, however, attempted to provide guidance for the candidates and campaigns as to certain specific situations which were discussed. Those specific situations and the opinion of the Commission with respect to allocation is attached to this letter as Appendix A and is made a part of this letter.

Very truly yours,
ELECTION LAW
ENFORCEMENT COMMISSION
By Edward J. Farrell
 Edward J. Farrell
 Counsel

EJF:no
Enclosure

## APPENDIX A

### TO A.O. 10–1985

The following is a list of representative situations with a notation "in" or "out". "In" means an allocated portion is subject to the expenditure limit of the gubernatorial candidate of the same political party. "Out" means it is not subject.

1. A picture of the candidate and Kean/Shapiro at public event where Kean/Shapiro appeared in the capacity of public official, taken at the time of the event and prior to the date of the primary, with caption identifying persons. (Example: dedication of a public work project, bill signing) OUT

2. Statement contained in the release copy of a speech or in a bona fide press release of a statement relating to a public event, a rally, a political dinner or the like, in the following format:

(a) "While serving on the Board of Trustees of X College with Kean/Shapiro, I was able to accomplish the following." OUT

(b) "I worked closely with the Kean administration and together we got Bill X passed." OUT

(c) "I support the efforts of the administration in the area of environmental law and I am proud to be a member of the Republican team." OUT

(d) "I am proud of the work done by Kean/Shapiro in the area of _____ and I am proud to be a member of the Rep./Dem. team." OUT

(e) "I support Kean/Shapiro and the other Rep./Dem. candidates." OUT

(f) "Vote for me and for the Rep./Dem. team." OUT

(g) "Vote for me and Kean/Shapiro" OUT

(h) "I, Assembly Candidate, support Kean/Shapiro and ask you to support him." OUT

(i) "I, Assembly Candidate, am opposed to the Kean/Shapiro position on Issue X and ask you to join me in opposing it." OUT

3. Advertisement for a rally "Come hear Assembly Candidate A and Kean/Shapiro." IN

4. Advertisement for a rally "Come hear Assembly Candidate A and other Rep./Dem. speakers." Kean/Shapiro attends and speaks. OUT

5. "Vote for me and Kean/Shapiro" in any of the following media:

newspaper IN
tv IN
radio IN
billboard IN
broadcast from truck speaker IN
handbill IN
bumper sticker IN
button (e.g., Candidate A/Kean or Candidate A/Shapiro) IN
sign in store IN
sign in front of home IN
sign on telephone pole IN
sign towed behind airplane IN
sign on public bus IN
mail (list prepared by candidate) IN
mail (list prepared by commercial vendor) IN
letter from candidate to selected persons IN
letter from candidate to general public IN

The Kean Committee cites *N.J.S.A.* 19:44A–40 and 41, which provide for civil and criminal penalties for violation of the statute, and points out the practical problem of having uncontrolled and uncoordinated expenditures of other candidates charged against its maximum expenditure limit. The Republican Assembly candidates note additional anomalies with the allocation scheme:

1. Individual non-candidates are apparently untouched by the AOs.

2. The minimal 15% allocation is arbitrary.

3. Assembly candidates are unfairly treated in that no allocation is required in connection with use of a pre-primary photograph with a gubernatorial candidate, while allocation would be applicable to a post-primary photo.

4. No allocation is required for use of the Governor's name or photo by a Democratic candidate, but is required of a Republican candidate.

Both plaintiffs contend that the AOs exceed the authority of ELEC under the statute and the regulations and additionally challenge their validity on federal constitutional grounds. Although ELEC has recommended to the Legislature in its 1982 and 1984 reports that the expenditure limitation be repealed as unfair and causing "an unnecessary and undesirable separation between the gubernatorial candidate and his or her legislative and local running mates"[1], Defendant defends the allocation rule as "reasonably appropriate to the protection of the expenditure limit" and not unconstitutional. In its brief, the Shapiro '85 General Election Committee, Inc., defends the allocation rule as "basic to the concept of a spending limit" and statutorily mandated.

I.

Although authorized by *N.J.S.A.* 19:44A–6f. and *N.J. A.C.* 19:25–14.1, the AOs cannot alter the terms of a legislative enactment or frustrate the policy embodied in the statute. *New Jersey Chamb. Commerce, supra,* 82 *N.J.* at 82. They obviously cannot exceed the scope of the authority vested in ELEC.

---

[1] ELEC May 1984 Report to the Legislature pursuant to *N.J.S.A.* 19:44A–7.1, p. 21.

*Common Cause v. New Jersey Election Law Enforce. Comm.*, 74 *N.J.* 231, 234–235 (1977). The expenditure limitation of *N.J.S.A.* 19:44A–7 is applicable to amounts spent "in aid of the candidacy of any qualified candidate for Governor"—not to amounts spent in aid of another candidate for another office. The AOs require allocation in the case of "combined" advertising, while *N.J.A.C.* 19:25–13.1 requires allocation only where an expenditure is made "on behalf" of two or more candidates. Since independent expenditures are not chargeable to the gubernatorial expenditure limitation of *N.J.S.A.* 19:44A–7 pursuant to *N.J.A.C.* 19:25–15.28, the problem boils down to distinguishing combined advertising in aid of two or more candidates from independent advertising. The answer is contained in the *N.J.A.C.* 19:25–15.3 definition of "independent expenditure", to wit: an expenditure not made "with the cooperation or prior consent of, or in consultation with or at the request or suggestion of [the candidate or a committee on his behalf]." In our view an expenditure for "combined" advertising by an Assembly candidate, including a reference to the gubernatorial candidate, is not properly allocable under *N.J.S.A.* 19:44A–7 unless it is authorized, coordinated or controlled by the gubernatorial candidate or his authorized campaign committee. The alleged common interest of the Assembly and gubernatorial candidates of itself is insufficient to overcome the requirement of prior consent. We are aware, of course, of the possibility of abuse of the expenditure limitation statute, but the AOs scheme under review goes clearly beyond the authorization of the statute and valid ELEC regulations. They are thus arbitrary and unreasonable; hence they are invalid.

## II.

Even if the AOs may be deemed authorized by the statute and regulations, we conclude that they are unconstitutional, as applied to these Plaintiffs, in that they violate First Amendment freedoms of speech and association. *FEC v. National Conservative PAC*, 470 *U.S.* ——, 105 *S.Ct.* 1459, 84 *L.Ed.*2d 455

(1985). As noted in the 7–2 majority opinion in that case, the United States Supreme Court in *Buckley v. Valeo,* 424 *U.S.* 1, 96 *S.Ct.* 612, 46 *L.Ed.*2d 659 (1976), had struck down as unconstitutional limitations on independent campaign expenditures in general. The *Buckley* court distinguished contributions and independent expenditure limitations:

> Unlike contributions, such independent expenditures may well provide little assistance to the candidate's campaign and indeed may prove counterproductive. The absence of prearrangement and coordination of an expenditure with the candidate or his agent not only undermines the value of the expenditure to the candidate, but also alleviates the danger that expenditures will be given as a quid pro quo for improper commitments from the candidate. Rather than preventing circumvention of the contribution limitations, § 608(e)(1) severely restricts all independent advocacy despite its substantially diminished potential for abuse.

[424 *U.S.* at 47, 96 *S.Ct.* at 648, 46 *L.Ed.*2d at 704]

██ Although not precedential because affirmed 4–4 by the Supreme Court, the analysis in *Common Cause v. Schmitt,* 512 *F.Supp.* 489 (D.D.C.1980), aff'd 455 *U.S.* 129, 102 *S.Ct.* 1266, 71 *L.Ed.*2d 20 (1982), is similar to *FEC v. National Conservative PAC, supra,* while a contrary view may be gleaned from Blum "The Divisible First Amendment: A Critical Functionalist Approach to Freedom of Speech and Electoral Campaign Spending," 58 *N.Y.U.* Law Rev. 1273 (Dec.1983). No useful purpose would be served by our repeating these analyses. Suffice it to say we deem *Buckley* and *FEC v. National Conservative PAC, supra,* to be dispositive of this appeal. Just as independent expenditure limitations are unconstitutional in the case of individuals, groups and PACs, they are unconstitutional as applied in this case to Assembly candidates, and such expenditures may not be allocated in any percentage to the gubernatorial candidates. The same would be true, of course, as to independent expenditures by candidates for other county and local offices.

██ Although campaign expenditure limits may be validly imposed upon a gubernatorial candidate concomitant with that candidate's receipt of public financing, there is no question that

such limits implicate First Amendment rights. *Buckley, supra,* 424 *U.S.* at 14, 96 *S.Ct.* at 632, 46 *L.Ed.*2d at 685. A limit on campaign expenditures directly and substantially affects the quantity of political speech, *Id.* at 39, 96 *S.Ct.* at 644, 46 *L.Ed.* 2d at 699, and thus freedom of speech is to some extent restrained. This restraint is justified in New Jersey by the State's interest in avoiding corruption or the appearance of corruption in the electoral process and by the policy of enabling qualified persons to seek the State's highest office despite a relative lack of wealth. *N.J.S.A.* 19:44A–27. However, the First Amendment right of free speech is a fundamental right and an infringement of that right, though justified, should be accomplished through the least restrictive means available. *Anderson v. Celebrezze,* 460 *U.S.* 780, 806, 103 *S.Ct.* 1564, 1578–79, 75 *L.Ed.*2d 547, 568–69 (1983).

 As noted above, there is a possibility that a candidate will attempt to abuse the expenditure limitation statute. A gubernatorial candidate might try to circumvent the expenditure limit by having an Assembly or local office candidate advocate his election through "combined" advertising. We do not believe, however, that ELEC may allocate against the gubernatorial candidate's expenditure limit some part of the cost of all instances of "combined" advertising. In so doing, ELEC in effect assumes there has been an attempt to circumvent the statute. Acting on such an assumption is an impermissibly broad means of limiting the gubernatorial candidate's right of free speech. In each situation ELEC should determine whether the campaign expenditure was made with the cooperation or prior consent of, or at the request or suggestion of, the gubernatorial candidate. If it was not so made, it is not truly "combined" advertising, and the cost may not be allocated in part to the gubernatorial candidate to further restrict his freedom of speech. We recognize that this places a difficult burden on ELEC. However, we feel it is a burden justified by the need to protect First Amendment rights.

AO 33–1981 and AO 10–1985 are invalid.