FRIENDS OF GOVERNOR TOM KEAN, THE AUTHORIZED COMMITTEE FOR THE RE–ELECTION OF GOVERNOR THOMAS H. KEAN, PLAINTIFF–RESPONDENT, v. THE NEW JERSEY ELECTION LAW ENFORCEMENT COMMISSION, AN AGENCY OF THE STATE OF NEW JERSEY, DEFENDANT–APPELLANT.

JOSEPH AZZOLINA AND JOAN SMITH, PLAINTIFFS–RESPONDENTS, v. THE NEW JERSEY ELECTION LAW ENFORCEMENT COMMISSION, AN AGENCY OF THE STATE OF NEW JERSEY, DEFENDANT–APPELLANT.

Argued September 23, 1985—Decision Rendered September 27, 1985.

Opinion Filed February 2, 1989.

*Edward J. Farrell* argued the cause for appellant (*Farrell, Curtis, Carlin & Davidson,* attorneys; *Edward J. Farrell* and *Cynthia H. Reinhard,* on the brief).

*John P. Sheridan* argued the cause for respondent Friends of Governor Tom Kean, etc. (*John P. Sheridan,* attorney; *John P. Sheridan, Allen E. Molnar* and *Edward K. DeHope,* on the brief).

*William F. Dowd* argued the cause for respondents Joseph Azzolina, et al.

PER CURIAM.

On September 27, 1985, we entered a summary order of disposition in this matter invalidating certain actions of the Election Law Enforcement Commission (ELEC). 102 *N.J.* 325. ELEC's actions would have allocated to Governor Thomas H. Kean's reelection campaign certain expenses of legislative candidates. The effect of the allocation would have been to limit the campaign spending that Governor Kean could make under our public financing laws. We unanimously agreed that the allocations should not be made. For completeness of the record, we now furnish a more detailed statement of the reasons that led us to that result.

Four members of the Court were of the view that the allocations were invalid as in excess of the statutory authority of ELEC. Two members of the Court, Justices Handler and

O'Hern, believed that although it was premature to adjudicate the invalidity of the allocations, the election had to proceed, and the only fair solution was not to allocate the contested expenses to Governor Kean's reelection campaign pending the outcome of the case. They concur in the result of our opinion. (We shall use the present tense in referring to our prior order of disposition.)

## I.

Specifically, we examine a pattern of rulings made by ELEC, the administrative body entrusted with enforcing the New Jersey Campaign Contribution and Expenditures Reporting Act, *N.J.S.A.* 19:44A–1 to –44. Our references herein are to the statutes and regulations in effect at the time of our decision. The general plan of the relevant portion of this law is to provide public financing for primary and general election campaigns for the office of Governor, conditioned on a candidate's acceptance of campaign expenditure limits. The purposes of that part of the law are clear: to mitigate the corrupting effect of money on the electoral process, and to enable "persons of limited financial means * * * [to] seek election to the State's highest office." *N.J.S.A.* 19:44A–27. By virtue of its role within the statutory scheme, ELEC faced the task of monitoring gubernatorial elections. Because such elections take place alongside many non-gubernatorial races in the context of a partisan, party-based political system, the agency confronted a specific problem: how to preserve the integrity of the limit on expenditures by a publicly-financed gubernatorial candidate in light of expenditures by non-gubernatorial candidates that appear to benefit the gubernatorial candidate, directly or indirectly.

In a 1981 Advisory Opinion, Advisory Opinion 33–1981 (hereafter AO 33–1981), ELEC decided to allocate to the gubernatorial candidate's expenditure limit a percentage of advertising expenditures made by a non-gubernatorial candidate of the same party that in certain ways mentioned or advocated the

election of the gubernatorial candidate. By virtue of that Advisory Opinion, sums of money spent by non-gubernatorial candidates—apparently even without a showing of prior knowledge, consent, authorization, or control by the gubernatorial candidates—would be allocated to the gubernatorial candidates and charged against their expenditure limits as if the gubernatorial candidates spent the money themselves. The effect, given the statutory limit on total permitted gubernatorial expenditures, would be to reduce, by that amount, the sum permitted to be spent on the gubernatorial candidate's own campaign.

The validity of AO 33–1981 was questioned in 1985 by Republican candidates for the Assembly and by Governor Kean's campaign committee. They asked ELEC either to revise or rescind that part of the opinion imposing "financial reporting and allocation consequences" whenever a legislative candidate mentions the Governor in campaign advertising. In Advisory Opinion 10–1985 (hereafter AO 10–1985), ELEC adhered to its 1981 position after considering both written and oral argument on the issue.

Thereafter, respondents, Friends of Governor Tom Kean (the campaign committee for the reelection of Governor Kean, a Republican), and Joseph Azzolina and Joan Smith (Republican candidates for the Legislature), challenged ELEC's interpretation of the law in connection with the 1985 election. Although not a party before this Court, the campaign committee for Peter Shapiro, the Democratic candidate for governor, participated at the agency level and filed a letter brief with the Appellate Division below, in support of ELEC's position. The court below held in favor of respondents and invalidated the agency's allocation rule. 203 *N.J.Super.* 523 (1985). We granted certification, 102 *N.J.* 319, on September 17, 1985.

We consider two issues. First, did the Legislature intend that ELEC have the power to allocate expenditures by a non-gubernatorial to a gubernatorial candidate in the absence of

any evidence that the gubernatorial candidate authorized or controlled the expenditures? Second, if the Legislature did so intend, is such an allocation an infringement of any constitutionally protected rights? [1]

## II.

■ The details of the inquiry are set forth in the reported opinion below. The case before us involves a regulation requiring allocation, without exception, whenever the advertisement of the other candidate includes support of the gubernatorial candidate regardless of all other circumstances. The question is whether the Legislature intended to give ELEC the power to adopt such a regulation.

---

[1]The Appellate Division held that the rule allocating such non-gubernatorial candidates' expenditures to the gubernatorial campaign violated ELEC's own regulations, exceeded its statutory authority, and was unconstitutional. 203 *N.J.Super.* 523. The Appellate Division observed that the allocation rule violated ELEC regulations *N.J.A.C.* 19:25–13.1, –15.3 and –15.28. These ELEC regulations clearly exempt independent expenditures by a third party on behalf of a gubernatorial candidate, *i.e.,* those made without the candidate's consent or authorization, from the allocation to the candidate's campaign. Implicit in the Appellate Division's opinion was the holding that the Advisory Opinions *requiring* such allocation could not amend, modify, or repeal ELEC's duly-adopted regulations. In other words, that portion of the Advisory Opinions containing the allocation rule was a nullity because it conflicted with a duly-adopted regulation. We need not pass on that issue because ELEC has indicated before us that, if necessary, it will cure that defect by incorporating the relevant portion of the Advisory Opinions in a new *regulation, N.J.A.C.* 19:25–15.28(c) that would read as follows:

> Notwithstanding the provisions of N.J.A.C. 19:25–15.28(a), an expenditure on behalf of a gubernatorial candidate by another candidate of the same party running in the same election shall be deemed to be an expenditure within the meaning of N.J.S.A. 19:44A–7 [the section imposing the campaign expenditure limit]. If the expenditure is on behalf of both the candidate making the expenditure and the gubernatorial candidate, it shall be allocated pursuant to N.J.A.C. 19:25–13.1.

Because we decide that ELEC's allocation scheme is invalid as applied to these expenditures, we treat the issues as if that regulation had been in force. In this way, we may pass on the merits of the substantive issue, namely, the statutory authority of ELEC to adopt such an allocation rule.

■ ELEC contends that the regulation allocating expenditures of other candidates to the gubernatorial candidate is necessary to accomplish the legislative intent to limit gubernatorial campaign expenditures. We agree that the Legislature must have intended ELEC to have the power to allocate *some* expenditures between or among candidates. Otherwise, gubernatorial candidates might circumvent the expenditure limit by conducting part of their campaigns through a non-limited candidate, thereby frustrating one of the purposes of the Act.

Despite these considerations, we cannot sanction ELEC's course of action in this case. We do not believe that a statutory policy authorizing ELEC to charge a *truly independent* and *uncontrolled* expenditure of another candidate against a gubernatorial candidate's account would have been enacted by the Legislature. It is manifestly contrary to the expectations of legislators based on their own experience and on strong political tradition in this State.

When running for election in a year that features a gubernatorial candidate race, candidates for the Legislature of this State almost invariably support that gubernatorial candidate in their speeches, their brochures, their billboards, on radio and television, and in practically every other kind of advertisement. Whether out of self-interest, mere habit, loyalty to the party, or political conviction, they all run, as a team, alongside their party's gubernatorial candidate, as a group committed to shared policies and to shared power. We take judicial notice of these political facts. We also judicially note that these legislative candidates are not controlled by the gubernatorial candidate, either legally or, usually, factually, in respect of the form and substance of their campaign.

The legislators who voted for these laws not only know this tradition, they have actually been part of it. The idea that the advertisement linking a legislator's campaign to the head of the ticket would reduce the amount the gubernatorial candidate could spend would be regarded as an intolerable reading of the

statute. In short, if ELEC's allocation regulation were upheld, this public-spirited law designed to finance the gubernatorial candidate's campaign could either cripple it or seriously alter the campaigns of legislative running-mates. The presumption of validity of the agency's allocation regulation dissolves when immersed in this political environment.

Furthermore, there is no evidence of any legislative assumption of interdependence between candidates of the same party under any provisions of the Act. Candidates must appoint their own campaign treasurers and each must designate a campaign fund depository. *N.J.S.A.* 19:44A-9. Each campaign treasurer must make a separate report to ELEC on all campaign contributions and expenses. *N.J.S.A.* 19:44A-8 to -16. Although the Act recognizes the existence of "allied candidates," the concept is limited explicitly to candidates running for election to the same county, school district, or municipal government, and legislative candidates with shared constituency. *N.J.S.A.* 19:44A-3(a). It has the effect only of requiring the reporting of an individual's separate contributions to each of such "allied candidates" as if they were one candidate. *N.J.S.A.* 19:44A-8(c). There is no evidence in the Act of a legislative presumption of control by one candidate's campaign organization over another.

Hence, we find that the allocation scheme embodied in AO 33–1981, AO 10–1985, and the proposed regulation amendment, *N.J.A.C.* 19:25–15.28(c), as applied to the independent expenditures of another candidate as outlined here, exceeds ELEC's grant of authority under the Act. While ELEC is free under the statute to allocate expenses to a gubernatorial candidate who in fact controls another candidate's expenditures, the agency cannot charge a gubernatorial candidate with another candidate's truly independent expenditures.

### III.

We also believe that even if ELEC's allocation rule for independent candidates were authorized by the Legislature in

its present form, it would be subject to serious constitutional challenge. In *Buckley v. Valeo*, 424 *U.S.* 1, 96 *S.Ct.* 612, 46 *L.Ed.*2d 659 (1976), the Supreme Court held that the first amendment prohibited congressional restrictions on independent expenditures (not contributions) by a person or corporation for the purpose of electing or defeating a candidate. In *Federal Election Comm'n v. National Conservative Political Action Comm.*, 470 *U.S.* 480, 105 *S.Ct.* 1459, 84 *L.Ed.*2d 455 (1985), the Supreme Court extended the *Buckley* holding, striking down similar restrictions on political action committees' (PAC) expenditures. Both holdings applied to independent expenditures made on behalf of any presidential candidate whose campaign is publicly financed and whose expenditures are statutorily limited to the amount of such financing. Although distinguishable on various grounds, the reasoning and the facts of those cases point strongly to the conclusion that the *de facto* restriction imposed by ELEC's allocation rule on truly independent expenditures by legislators to elect their gubernatorial candidate would be similarly suspect.

Of course, ELEC remains free to cope with subterfuge arising from joint funding of gubernatorial and legislative campaigns or similar concerted campaigning. The clear avenue for regulatory action available to ELEC appears to be one directed at expenditures that are consented to or authorized by the gubernatorial candidate or that candidate's committee or an umbrella organization. We do not believe that there are serious constitutional questions that would arise from an appropriately drafted set of regulations along those lines.

As noted above, *supra* at 34, although our concurring members would not, in September 1985, have allocated the disputed expenditures to Governor Kean's reelection campaign, they would not declare the regulation invalid in the absence of a more fully developed record. In their view, more needs to be known about the election strategy. Were there common sources of funding? Were there legislative districts that received the benefit of combined fund raising? Was there coordi-

nation of an overall-campaign strategy? But they agreed that the election could not wait for the development of such a record. Hence, because of the closeness of the questions presented, they too would have stayed the allocation of expenditures of allied legislative candidates under AO 33–1981 with respect to the matters outlined in the inquiry. Armed with a better record of how the separate campaigns are funded, coordinated, and managed, they believe that we could resolve the questions of whether these were or were not truly independent expenditures beyond the scope of campaign-funding laws; and if not, whether ELEC has the authority to allocate allied expenditures pursuant to AO 33–1981. That is essentially the course followed by the Supreme Court in its *National Conservative PAC* disposition. Spending issues raised in 1983 that would have affected the 1984 election were not resolved until 1985, after the Presidential election.

A majority of members believe, however, that the issues were sufficiently developed on the record before us to adjudge that the contested expenditures by legislative candidates would not have been within the Legislature's contemplation as the expenses of a gubernatorial candidate.

As modified, the judgment of the Appellate Division is affirmed.

HANDLER and O'HERN, JJ., concur in result.

*For modification and affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*Opposed*—None.